# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| R. DANNY HUNTINGTON,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF COMMERCE,<br><br>Defendant. | Civil Action No. 15-2249 (JEB) |

## MEMORANDUM OPINION

Plaintiff R. Danny Huntington has been on a quest to uncover everything he can about a confidential U.S. Patent and Trademark Office program called the Sensitive Application Warning System (SAWS). The program, which the USPTO recently abandoned, was used to flag certain patent applications involving particularly sensitive subject matter. Seeking to learn more about SAWS, Plaintiff filed multiple Freedom of Information Act requests with the USPTO, a component of Defendant U.S. Department of Commerce. After a search and the production of some, but not all, relevant documents, Huntington brought this suit.

In the second of two prior Opinions, this Court ordered Defendant to resolve one remaining area of deficiency in its search. Commerce has now filed a Second Renewed Motion for Summary Judgment claiming that it has adequately done so. The Court agrees; as it finds that the USPTO has satisfied FOIA's dictates, it will grant summary judgment in Defendant's favor. Having successfully obtained another 67 pages of records in this round, Plaintiff's expedition – at least via this lawsuit – is finally finished.

1

I.      **Background**

The Court's first Opinion in this matter lays out the full details of the controversy, see Huntington v. U.S. Dep't of Commerce (Huntington I), 234 F. Supp. 3d 94, 98-100 (D.D.C. 2017), so they are only briefly summarized here.

In 1994, the USPTO implemented the SAWS program "to allow patent examiners to alert leadership when a patent might issue on a sensitive matter." See ECF No. 14-4 (Declaration of John Ricou Heaton), ¶ 21. This alert triggered an internal quality-assurance check, see ECF No. 18-1 (Supplemental Declaration of John Ricou Heaton), ¶ 22, which could affect whether an application was ultimately granted or denied. See Heaton Decl., ¶ 9. If the patent was issued, then a SAWS report – describing the invention and its sensitive nature – would be generated and, depending on the issue, sent up the chain of command. Id. SAWS reports were also sent to the Patent Trial and Appeal Board (PTAB) as part of the appeals process. See Huntington I, 234 F. Supp. 3d at 108. The USPTO abandoned the program in March 2015. Id.

During the first half of 2015, Huntington submitted several FOIA requests to the USPTO seeking records related to SAWS. After Commerce initially released some documents, see ECF No. 11-4, Exh. 2-2 at B002, Huntington filed multiple unsuccessful administrative appeals, id., Exhs. 2-3, 2-4, and then brought this suit in December 2015, alleging that Defendant had failed to both conduct an adequate search and produce responsive records. See ECF No. 1 (Complaint), ¶¶ 34-43. In response, the USPTO undertook "a more thorough subsequent search," Heaton Decl., ¶ 23, and released 4,114 pages and five spreadsheets of material, of which one document was redacted in full and 132 pages were redacted in part pursuant to FOIA Exemptions 3, 5, and 6. Id., ¶ 50.

Claiming that Defendant's search was inadequate and that certain records were improperly withheld, Huntington moved for partial summary judgment. See ECF No. 11 (Pl. First MSJ). Commerce, conversely, believed it had satisfied its FOIA obligations and thus cross-moved for summary judgment. See ECF No. 14-2 (Def. First MSJ). Partially granting and partially denying these motions, the Court ordered Defendant to (1) fix the facial deficiency in its search description, (2) describe its search in further detail, and (3) search the PTAB Chief Judges' records. Huntington I, 234 F. Supp. 3d at 104-05, 108-09. The Court, however, upheld all of Defendant's withholdings. Id. at 110. In response, the USPTO cured the facial deficiency, explained in more detail the search of various offices, and searched the PTAB Chief Judges' records – releasing an additional 25 pages of documents, of which four documents were redacted in part. See ECF No. 22-2 (Second Supplemental Declaration of John Ricou Heaton), ¶ 8.

Contending that it had carried out the Court's Order and thus fully complied with FOIA, Defendant renewed its summary-judgment motion. See ECF No. 22 (Def. Second MSJ). Believing that Defendant's search was still inadequate and that certain records continued to be improperly withheld, Plaintiff renewed his Cross-Motion as well. See ECF No. 23-1 (Pl. Second MSJ). Once again, the Court partially granted and partially denied both motions. See Huntington v. U.S. Dep't of Commerce (Huntington II), 266 F. Supp. 3d 264 (D.D.C. 2017). The Court found that the USPTO had generally satisfied its Order but that its search remained wanting inasmuch as it had failed to search the files of PTAB Administrative Patent Judges (APJs) in addition to those of Chief Judges. See id. at 274-75.

The Court thus ordered Defendant to either: (1) submit an additional declaration describing in detail the search of certain APJs' records and a sufficient explanation of why more

APJs' files were not searched, or (2) search all APJs' SAWS-related records and provide a description thereof. Id. at 275. In response, the USPTO selected door number two, as will be detailed below. Maintaining that it has now carried out the Court's Order and thus fully complied with FOIA, Defendant files yet another Motion for Summary Judgment. See ECF No. 32 (Def. Second Renewed MSJ). Rejoining that Defendant's search remains inadequate, Huntington renews his Cross-Motion as well. See ECF No. 33 (Pl. Second Renewed MSJ). Both are now ripe.

## II. Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In the event of conflicting evidence on a material issue, the Court is to construe the conflicting evidence in the light most favorable to the non-moving party. See Sample v. Bureau of Prisons, 466 F.3d 1086, 1087 (D.C. Cir. 2006).

4

FOIA cases typically and appropriately are decided on motions for summary judgment. See Brayton v. Office of U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011). In a FOIA case, a court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted). "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter *de novo*.'" DOJ v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).

### III. Analysis

What remains of the parties' dispute revolves around one question: was the search conducted with regard to APJs adequate? Although Defendant's Second Renewed Motion justifies both the adequacy of its latest search and the exemptions it relied on in redacting several of the documents found, Plaintiff disputes only the former point. As such, the Court first discusses the legal standard governing the adequacy of searches and describes the most recent search conducted by the USPTO. It then examines each of Plaintiff's objections in turn.

#### A. Standard and Description of Search

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" Valencia-

Lucena v. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)); see also Steinberg v. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." Weisberg v. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984).

The adequacy of an agency's search for documents requested under FOIA "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." Id. To meet its burden, the agency may submit affidavits or declarations that explain the scope and method of its search "in reasonable detail." Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982). The affidavits or declarations should "set[] forth the search terms and the type of search performed, and aver[] that all files likely to contain responsive materials (if such records exist) were searched." Oglesby v. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990). Without contrary evidence, such affidavits or declarations are sufficient to show that an agency complied with FOIA. See Perry, 684 F. 2d at127. On the other hand, if the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." Truitt, 897 F.2d at 542.

In this case, the USPTO supports its position that its search is now sufficient by offering two declarations of John Ricou Heaton, an Associate Counsel for the Office of General Law and a FOIA officer at the USPTO. According to Heaton, the USPTO complied with the request to search all APJs' SAWS-related files by first identifying current and former APJs and then proceeding to conduct searches of their records in a process almost identical to the one previously approved of by the Court. The USPTO contacted the Office of Human Recourses

6

(OHR) and the Patent Trial and Appeal Board, who jointly identified 205 current and 72 former APJs who had been PTAB APJs prior to the termination of the SAWS program on March 2, 2015. See ECF No. 32-2 (Fourth Supplemental Declaration of John Ricou Heaton), ¶ 3. As in previous USPTO searches, the Cyber Security Investigations Office was then contacted to perform email searches of the 205 current APJs, as well as searches for emails or other electronic files of the 72 former APJs. Id., ¶ 4. The current APJs were additionally tasked with searching their laptops and any other electronic file locations reasonably likely to have responsive records. Id., ¶ 5. All of the electronic searches were conducted using the key terms "SAWS," "special application," and "sensitive application." Id., ¶¶ 4-5. Current APJs were also asked to search any paper records they kept, id., ¶ 5, and the Deputy Chief Judge and Administrative Management Specialist of PTAB were consulted to locate paper records of former ALJs. Id., ¶ 6. As a result of these searches, the USPTO located and released an additional 67 pages of responsive records, 10 of which contained redactions. See Fourth Suppl. Heaton Decl., ¶ 8.

    B. Plaintiff's Objections

Huntington's challenges to this latest search fall generally into three categories, which the Court addresses in turn.

    1. *Electronic Search*

His initial objection is that Defendant "failed to demonstrate that it searched for all responsive records from Board personnel for the full period from 1994 to Plaintiff's FOIA request date of November 2, 2015." Pl. Sec. Ren. MSJ at 3 (emphasis deleted). Although both sides agree that APJs who started working after SAWS was abandoned on March 2, 2015, would not have relevant documents, Huntington nonetheless argues that the timeframe the USPTO used

7

to identify relevant APJs – *i.e.*, ending on March 2, 2015 – was too narrow for the records search. Id. In response, Defendant offers a supplemental declaration from Heaton that resolves the issue: the briefer date range was used only to identify relevant APJs. See ECF No. 35-2 (Fifth Supplemental Declaration of John Ricou Heaton), ¶ 4. A separate date range – going all the way up to when the FOIA request was received on November 9, 2015 – was used to delimit the search for relevant records of identified APJs. Id.

Plaintiff next takes issue with how many APJs were identified as relevant by the USPTO. Huntington maintains that Defendant's identification of 72 individuals is significantly too low. See Pl. Sec. Ren. MSJ at 3-4. Citing a 1998 Department of Commerce Audit Report, he claims that "[s]ubstantial evidence shows that, on average, about 9.7% of APJs have left the Board per year since 1994," and it is thus reasonable to infer that the turnover of APJs at PTAB over the 20-year period "may well have been about 200%." Id. (citing Dep't of Commerce Inspector General Patent and Trademark Office, Board of Patent Appeals and Interferences: High Inventory and Inadequate Monitoring Threaten Effectiveness of Appeal Process, Audit Report No. BTD-10628-8-0001 at 9 (September 1998), available at www.oig.doc.gov/ORGPublications/USPTO-BTD-10628-09-1998.pdf). Given this alleged high turnover rate, Plaintiff argues that "it is likely that . . . not all the former APJs" were included in the 72 identified by the USPTO. Id.

This argument is speculative at best and misleading at worst. Even assuming the initial calculations are correct – and the Court could not replicate them – there is no reason to believe that the 1994-98 time period used as the baseline for PTAB's "churn rate" is representative of the next 17 years. In fact, the opposite is likely true: not only has PTAB grown from 43 APJs in

8

1998 to 205 today, but most of the departures driving the alleged turnover occurred in one year (1994) in what the Audit Report described as a "wave of retirements." Audit Report at 9. For its part, Defendant point out that it undertook "a reasonable search to identify former APJs" by contacting OHR and PTAB and asking them to provide information as far back as available. See ECF No. 35 (Def. Reply) at 3. Defendant holds the stronger ground; its affidavits and declarations describing its search cannot be rebutted by "purely speculative claims about the existence and discoverability of other documents." Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981).

Citing again the Audit Report, Plaintiff also expresses concern that the USPTO failed to identify any examiners who may have been temporarily detailed as APJs under a statute in effect until 2000. See Pl. Sec. Ren. MSJ at 4. But, as Heaton points out in his supplemental declaration, see Fifth Suppl. Heaton Decl., ¶ 4, and as noted in the Audit Report itself, the detail program actually ended in 1997. See Audit Report at 9. Even if that were not the case, OHR did not track and therefore has no way of identifying individuals who may have been detailed. See Fifth Suppl. Heaton Decl., ¶ 4.

Finally, Huntington challenges the USPTO's search description in three ways: (1) it is facially flawed, (2) it states that it merely "tasked" current APJs to search their files, and (3) it does not identify searches for electronic files anywhere other than laptops and emails. See Pl. Sec. Ren. MSJ at 5-6. None of these points is availing. First, Plaintiff does not and cannot substantiate his facial challenge, as Heaton sufficiently avers that the search "was reasonably calculated to uncover all responsive records." Fourth Suppl. Heaton Decl., ¶ 8 (emphasis added); see Am. Immigration Council v. U.S. Dep't of Homeland Sec., 21 F. Supp. 3d 60, 71 (D.D.C.

2014) ("[a]t a minimum, [the agency] ha[s] to aver that it has searched all files likely to contain relevant documents") (emphasis added). Heaton similarly parries the second attack by clarifying that he not only tasked APJs with a search but also "verified with each of the 205 current APJ's by email that they had completed their searches." Fifth Suppl. Heaton Decl., ¶ 5. Last, Heaton explains that when APJs' work computers were replaced by laptops in 2011, USPTO procedure dictated the transfer of all files to those laptops; there are thus no other locations to be searched for relevant files. Id., ¶ 6. USPTO's 30-day retention policy for electronic files, moreover, means that the only electronic records for former ALJs that do exist are emails. Id. In light of these additional explanations, the USPTO's search of electronic records is adequate.

   2. *Paper Search*

Plaintiff's next objection echoes his previous challenges but applies them to the USPTO's search for paper records. He points out the "tasking" issue noted earlier, questions why the USPTO did not consult with additional personnel, and critiques the lack of precision in Defendant's description of its search. See Pl. Sec. Ren. MSJ at 6-8. The "tasking" issue having been covered above, Heaton's supplemental declaration satisfactorily explains that the search was "reasonably calculated to uncover all relevant documents," Valencia-Lucena, 180 F.3d at 325 (citation omitted), as the two people consulted – namely, PTAB's Deputy Chief Judge and its Administrative Management Specialist – were the "most knowledgeable about the current existence or location of paper records." Fifth Suppl. Heaton Decl., ¶ 3 (emphasis added). Finally, Huntington's displeasure with the USPTO's description – *i.e.*, that it fails to provide sufficient detail regarding record maintenance and search methodology, see ECF No. 37 (Pl. Reply) at 3-4 – is similarly unconvincing. Heaton reiterates and specifically refers to the

description of the search for Chief Judge records that the Court previously found adequate. See Huntington II, 266 F. Supp. 3d at 274 (concluding that "[g]iven this agency diligence, Plaintiff no longer argues that the search of the PTAB Chief Judges' records was insufficient."). The Court sees no reason to find Heaton's description any less adequate now.

Plaintiff insists, more generally, that because no records have been found, the search must yet be incomplete or inadequate. Unfortunately for him, "mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for the requested records." Wilbur v. CIA, 355 F.3d 675, 678 (D.C. Cir. 2004). Even if Huntington were granted the search of his dreams, there might just be no there there. He nonetheless argues that the USPTO's statutorily required record-disposition plan suggests that "the PTO must possess in its archives . . . files that are likely to contain responsive records." Pl. Sec. Ren. MSJ at 8. As Heaton's supplementary declaration makes clear, however, the record-disposition plan Plaintiff refers to was superseded in 2011 by a plan with a much shorter retention period that was applied retroactively. See Fifth Suppl. Heaton Decl., ¶ 8. There is good reason to believe the documents Plaintiff is looking for no longer exist.

    3. *Search Strategy*

Plaintiff's final attempt to challenge the USPTO's search strategy also gains no traction. He first criticizes Defendant's exclusive use of singular-form search terms as inadequately narrow, arguing that terms such as "sensitive application" exclude documents that contain the words "sensitive applications." This is simply incorrect. Huntington cites cases where searches using only plural forms were held to be unreasonably narrow. See Pl. Reply at 5. These decisions are inapplicable here, however, as, unlike plural-form-only searches, those using

11

singular forms include documents containing the plural form.  In fact, the Outlook manual Plaintiff cites explains that "if you type ray into the Search box, Outlook will return messages that contain . . . rays, but not disarray or tray."  Microsoft, Learn to narrow your search criteria for better searches in Outlook, https://support.office.com/en-us/article/Learn-to-narrow-your-search-criteria-for-better-searches-in-Outlook-d824d1e9-a255-4c8a-8553-276fb895a8da (cited by Pl. Sec. Ren. MSJ at 9).  As Defendant points out, moreover, the singular-form search terms used by the USPTO to search the electronic files of APJs are the exact same terms the USPTO has been using in all its previous searches.  See Heaton Decl., ¶ 43; Second Suppl. Heaton Decl., ¶¶ 4, 6, 7.  Up to this point, the adequacy of these search terms has gone uncontested by Plaintiff, and he offers no basis for why he has waited to raise this issue until now.  The USPTO "has discretion to craft a list of search terms that it believes is reasonably tailored to uncover documents responsive to the FOIA request," Coffey v. Bureau of Land Mgmt., 249 F. Supp. 3d 488, 498 (D.D.C. 2017) (internal citation and brackets omitted), and it has done so here.

Plaintiff proceeds to argue that the USPTO's search description was inadequate because it did not describe the search-term algorithm and search strategy it used to conduct its search. See Pl. Reply at 4-5.  "An agency's affidavits need not be precise but they must provide basic information on what records were searched, by whom, and in what manner."  Schrecker v. Dep't of Justice, 217 F. Supp. 2d 29, 33 (D.D.C. 2002) (citation omitted).  Although the USPTO did not provide specific details on the search formula it used, it does not follow that its search description is inadequate.  In fact, courts in this Circuit have universally found the opposite.  See Bigwood v. United States Dep't of Def., 132 F. Supp. 3d 124, 141-42 (D.D.C. 2015) (finding search description sufficient despite absence of information concerning Boolean operators or

connectors used in electronic search); <u>Citizens for Responsibility and Ethics in Wash. v. Nat'l Indian Gaming Comm.</u>, 467 F. Supp. 2d 40, 50 (D.D.C. 2006) (same, adding that "FOIA does not demand this degree of detail").  The Court finds similarly here.

## IV.	Conclusion

In sum, having fully complied with the Court's multiple Orders, Defendant has shown that it carried out the search in a manner reasonably calculated to locate documents responsive to Huntington's FOIA requests.  For the foregoing reasons, Defendant's Second Renewed Motion for Summary Judgment will be granted and Plaintiff's will be denied.  A separate Order so stating will issue this day.

*/s/ James E. Boasberg*  
JAMES E. BOASBERG  
United States District Judge

Date:  <u>January 31, 2018</u>